Trapp vs. The New Birdsall Co.

TRAPP, Respondent, vs. THE NEW BIRDSALL COMPANY, Appellant.

*April 15 — May 3, 1898.*

*Sale of chattels: Warranty: Evidence: Conditions: Waiver.*

1. A machine sold under a warranty which provided that "if the purchaser does not make full settlement, in cash or approved notes, for the machine, on its delivery to him, he thereby waives all claims under this warranty," was delivered by the seller on the premises of the buyer without any request for settlement by note, and about one month afterward, with knowledge of the facts, he received and retained the buyer's note for the price. *Held*, that the seller thereby waived his right to rely upon the delay of settlement as a forfeiture of the special warranty.

2. A provision in a contract of sale of a machine expressly requiring the purchaser to give written notice of all defects to the seller with reasonable time to repair the same, is a condition precedent, compliance with which is essential to a recovery for a breach of the warranty.

3. A breach of warranty, that a fifteen horse power engine sold under it was "capable of doing as much and as well as other machines of like size and proportions," is not established by proof merely that it did not or could not be made to develop and maintain fifteen horse power, without evidence that other engines of the size and proportions of the one in question were capable of developing and maintaining effectively that much power.

APPEAL from a judgment of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

Action for breach of warranty in the sale of a threshing machine engine. On the 29th day of January, 1895, the defendant, through its duly-authorized agent, sold to the plaintiff a threshing machine engine for $1,200, payable $400 in an old engine, and $800 January 1, 1896, with the following warranty in writing: "This machine is hereby ordered, purchased, and sold, subject to the following warranty: That the machine is well built, of good materials, and with proper management is capable of doing as much and as well as other machines of like size and proportions." The contract of sale contained the following stipulations: "The purchaser agrees, if the machine should not work well, to give written notice to the Birdsall Co., at Auburn, N. Y., stating wherein it fails, and also give like notice to the agent from whom it was received. It is agreed that notice shall be given both to the company and the agent, and notice to either alone shall not be sufficient. Reasonable time is to be allowed to get to it and remedy the defects, if any exist. . . . If it cannot be made to perform as guaranteed, it shall be returned to place where received and a new machine given in its place, or the notes and money refunded. . . . If the purchaser does not make full settlement in cash or approved notes for the machine upon its delivery to him, he thereby waives all claims under this warranty and the whole of the purchase money becomes due and demandable."

The written contract was set forth in full in the complaint, with allegations in addition in regard to representations as to the capacity of the engine, made at the time of the making of the written contract, but not included therein. The complaint alleged that the engine failed to fulfill the guaranty, in that it was poorly constructed, not of good material, and that it was not capable of doing work it was

Trapp vs. The New Birdsall Co.

warranted to perform. Performance of all the conditions precedent to plaintiff's right of action on the warranty was duly pleaded. The answer denied all the allegations of the complaint in regard to the alleged breach of warranty, and the performance of the conditions precedent to plaintiff's right to rely on it.

At the close of the evidence, defendant's counsel moved the court to direct a verdict in defendant's favor upon the ground that there was no evidence to sustain the allegations of the complaint as to the breach of warranty, and that the warranty was waived. The motion was denied and due exception taken to the ruling. The cause was then submitted to the jury for a special verdict, which resulted in findings, so far as they relate to the questions presented on this appeal, in substance as follows:

(1) The engine was not well built, was not built of good material, and, with proper management, was not capable of doing as much and as well as other machines of like size and proportions.

(2) The machine was delivered June 3, 1895, and settled for July 1st, thereafter.

(3) We assess plaintiff's damages at $1,281.

Defendant's counsel moved the court for judgment in defendant's favor notwithstanding the verdict, and also moved the court to set the verdict aside and for a new trial, among other things, because the verdict was contrary to the evidence, both of which motions were denied, and the rulings duly excepted to. Judgment was rendered in plaintiff's favor upon the verdict, from which defendant appealed.

*Maurice McKenna*, for the appellant.

*J. J. Sutton*, for the respondent.

MARSHALL, J. The first question requiring consideration is, Was the special warranty, relied on by plaintiff, forfeited by a failure to settle for the engine at the time of its deliv-

ery, by giving approved notes for that part of the consideration to be paid in money January 1, 1896? The contract made the warranty contingent on such settlement, and it stands conceded that the engine was delivered June 3, 1895, and was not settled for by giving approved notes till July 1st thereafter. Admitting, for the purposes of this case, that strict performance of the condition in regard to the settlement was necessary in order to preserve the special warranty, in the absence of a waiver of such performance, it must be held, in accordance with the plainest principles of estoppel or waiver by conduct, that the delivering of the machine by defendant on plaintiff's premises, without demanding or requesting settlement by note, the acceptance of the note thereafter, and retention and use of the machine by plaintiff with knowledge of the facts, all of which appear by the evidence, effectually waived the element of delay, if there was any. Authorities on the subject of waiver of provisions as to forfeitures in contracts of this kind are numerous, but the principles involved are too elementary to warrant citing such authorities in this opinion.

The next and really only other question which need be noticed is, Was there any evidence to support the finding of the jury that the engine was not of good material and well built, and not capable of doing as much and as well as other machines of like size and proportions? If not, then defendant's motion for the direction of a verdict should have been granted, and the court, failing in that, should have granted the motion to set aside the verdict as contrary to the evidence.

Was the engine made of good material and well built? There is testimony that the cylinder head, piston head, and cross head all broke at one time, but plaintiff testified that such occurrence was caused by the engineer allowing the cross head to get loose,— that it was his fault and not the fault of the machine; and the evidence all tended to show

that the accident was not attributable to any defect, either in the construction of the engine or the material of which it was built.   Nevertheless defendant, when notified of the accident, promptly repaired the machine, and, as plaintiff said, made it as good as ever.   There was evidence that the safety plug melted; also that one of the fire grates melted down.   In regard to that, plaintiff, and other witnesses as well, testified in effect that such occurrences were probably the fault of the person in charge of the engine.   Plaintiff said of the quality of the machine as to workmanship and material: "There was nothing about the engine that I can say was defective so far as material was concerned.   Don't know anything except the piston head, cross head, cylinder head, and safety plug.   Did not seem to have trouble with anything else except the grates; the blame for that was on the man in charge of the engine."

From the foregoing it is manifest that there was no evidence to warrant the verdict that the machine was not well built and of good material.   Moreover, the contract expressly required the purchaser to give defendant written notice of all defects, with reasonable time to repair the same, before declaring on the warranty, and the evidence shows that no written complaint was made involving the subject of faulty material or construction, so the issue in that regard should have been taken from the jury.

The only other element of the warranty in issue is, Was the engine capable, with proper management, of doing as much and as well as other machines of like size and proportions?   We are unable to find satisfactory evidence in the record that notice, written or otherwise, was given to the defendant on that point.   The most that can be claimed is that written notice was given that the engine would not do the work of operating plaintiff's threshing machine with its attachments.   Plaintiff's version of the contents of the notice was that "the engine *would not do the work.*"   It is mani-

fest, when that is considered in connection with all plaintiff's evidence in the case, that his complaint really was, not that he failed to get a fifteen horse power engine capable of doing work equal to that of similar machines, but that he did not obtain an engine that would develop fifteen horse power and run his Advance separator with all the attachments,— bagger, self-feeder, and blower,— which required from six to eight horse power in addition to the ten or twelve required to run an ordinary machine without such attachments. But conceding that the notice to the defendant that the engine "*would not do the work*" should be interpreted to mean the work guaranteed, and that it was sufficient to lay a proper foundation for resort to defendant's liability on the warranty, then the cause of action cannot be sustained by mere proof that the engine did not develop fifteen horse power. That was not guaranteed. Nor by evidence that the engine was not capable of developing and maintaining fifteen horse power in the actual operation of running a threshing machine. That was not what defendant guaranteed. The case seems to have been tried and submitted to the jury on the assumption, without evidence, that an engine of the size and proportions of the one in question is capable of developing and maintaining, in operation, fifteen working horse power. With that as the test, plaintiff and several other witnesses testified that the engine in question would not develop and maintain, effectively, that much power. No comparison of the working power of the engine was made by any witness with any other machine of like size and proportions, nor was any evidence produced of the working power, in actual operation or otherwise, of similar machines. So, as to the real issue of fact in the case, i. e. whether the engine was capable of doing as much and as well as other machines of like size and proportions, even if we say complaint was made in writing as required by the contract on that point, there was no

evidence produced and preserved in the record, that we can discover, to sustain the affirmative.

It follows that the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— So ordered.